**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WILLIAM R. SIMMONS,**

               **Plaintiff,**

   **v.**                         **Civil Action 2:19-cv-5109**
                                   **Judge Sarah D. Morrison**
                                   **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

               **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, William R. Simmons, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed his application for DIB on March 29, 2016, alleging that he was disabled beginning March 1, 2014. (Tr. 213–14). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on May 9, 2018. (Tr. 1–26). On December 5, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 81–90). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 35–41).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 21, 2019 (Doc. 1), and the Commissioner filed the administrative record on February

25, 2020 (Doc. 9). Plaintiff filed his Statement of Errors (Doc. 13) on April 16, 2020, and

Defendant filed an Opposition (Doc. 15) on May 31, 2020. Plaintiff filed his Reply (Doc. 16) on

June 15, 2020. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

The [Plaintiff] testified in part that he stopped working because he could not perform the exertional requirements of his job. He alleged he is in constant pain despite surgeries in September 2015 and August 2017 and physical therapy. He also complained of COPD, with four hospitalizations (twice in 2014) and a need to use a rescue inhaler twice/day. He allegedly suffers from "high anxiety" and depression, takes clonazepam (*see* 19F/2) and has attempted suicide (5F/12), but sees only his primary care physician (who prescribes his medications) saw a mental health specialist in June/July 2016 and was told by his doctor he does not need a specialist. A February 2016 note found he "reports no insomnia, no stress, and no loss of interest." 5F/9. He had pneumonia and has had 2 heart attacks (*e.g.*, 4F/78, 292) and heart failure. He was hospitalized in January 2018. He used to smoke ½ to 1 pack of cigarettes/day (*but see* 4F/52) and quit in February 2018. He cannot do housework- he cannot bend down and he has breathing problems. He can lift about 10 pounds, but avoids trying to do so. He can walk 100 feet and sit/stand every 15 minutes. He has no hobbies, but watches television, reads and socializes. He remembers what he reads, but only for a few days. He also complained of ongoing back pain.

(Tr. 86).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's medical records and symptoms:

Medical evidence includes reference to August 2015 lumbar MRIs showing left L5-S1 disc herniation and S1 nerve root entrapment. 3F/258–275; 5F/20. Surgery was offered and performed September 25, 2015. 4F/23–24. The radiculopathy resolved. 8F/8; 11F. He had post-operative pain management, which he discontinued in December 2015. Although sensation, muscle tone and reflexes all were normal, he complained of left side and low back pain. 15F/4, 7. He went to the emergency room in May 2016 for back pain, but was not admitted. 6F; 7F/3. June 2016 x-rays showed no instability. 8F/6. August MRIs showed postsurgical changes at L5-S1, multilevel facet hypertrophy, greatest at left L5-S1, with a small effusion, and multilevel disc degeneration. 15F/10; 16F. He underwent lumbar laminectomy, facetectomy and foraminotomy on August 11, 2017, based on diagnoses of

2

radiculopathy and complaints of ongoing pain. 21F/ 10. Following the surgery, he had a small infectious abscess wound, which was resolved with treatment. 20F.

The [Plaintiff] was hospitalized in October 2014 for pneumonia, with post-discharge syncope. 4F/51, 119-121. He was smoking 1 to 1 ½ packs of cigarettes/day. 4F/52. He was discharged in improved condition. 4F/35. New imaging revealed new pulmonary infiltrate, which was improving. 4F/62, 90. In December 2015, diagnosed with pulmonary emphysema/pneumonia, no pulmonary function testing (PFT) was performed. Following treatment, he demonstrated "no dyspnea ... no wheezing, rales/crackles, or rhonchi and breath sounds normal and good air movement." 5F/2-3. He continued to smoke (5F/9), not ceasing until February 2018 according to his own testimony. While records refer to an abnormal 2011 PFT, it is not found. 15F/5; 21F/4. However, even if available, having been performed in September 2011, as stated, it would be of no value with onset alleged in March 2014. He was treated in June 2016 for a brief syncopal episode. 9F. On August 12, 2016, he was hospitalized with acute hypercapnic and hypoxic respiratory failure secondary to COPD exacerbation. 14F/1, 19. Cessation of tobacco abuse was recommended - again. 14F/2. X-rays showed right lung infiltrates. 14F/27. A March 2018 note again shows his lungs to be clear (22F/5) and April chest CTs show the micronodular processes first seen in 2014, but note "Overall however the lungs currently appear significantly improved from multiple prior exams. Appearance suggests a chronic inflammatory process." 25F/2.

Shortly after the [Plaintiff]'s 2017 surgery, the [Plaintiff]'s ECG was found to be abnormal. He underwent admission for acute inferior wall ST elevated myocardial infarction secondary to acute stent thrombosis. Catheterization found 100% stenosis of the right coronary artery, reduced to zero through stenting or percutaneous transluminal coronary angioplasty. 22F/8. No other occlusions were seen. 22F/9, 14. The [Plaintiff] again was advised to cease smoking. 22F/10.

The record documents mild obesity since the alleged onset date. The [Plaintiff]'s Body Mass Index or BMI has been in the narrow range of 1 (4F/65; 16F/8) to 33 (15F/3; 21F/2; 22F/2), only reaching 34 in February 2016 (5F/9) and December 2017 (20F/11). The most recent BMI was 33.6 in March 2018. 22F/2. All of these remain in the mild range (30-34.9). SSR 02-lp.

(Tr. 83–84).

The record documents diagnoses of anxiety and depression by consulting psychologists (1F; 13F) and treatment for suicide (3F; 5F), but no mental health specialist treatment. General physician examination notes reflect comments such as good judgment, active and alert mental status, oriented, but anxious with no insomnia, stress, loss of interest or significant weight change. 4F/4; 5F/3; l0F/10; 16F/18. Although he testified, he saw a mental health specialist only once in August 2016, the only notes are from a mental health nurse practitioner who saw the [Plaintiff] twice, in June and July 2016. 12F.

(Tr. 84).

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2019 and had not engaged in substantial gainful employment since his alleged onset date of March 1, 2014. (Tr. 83). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative lumbar disc disease, chronic obstructive pulmonary disease (COPD), coronary artery disease (CAD) with stenting, obesity, depression, and anxiety. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, I find that the [Plaintiff] has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; have occasional exposure to unprotected heights, dangerous heavy moving machinery, vibrations, extreme heat and cold, humidity, dust, gases, odors, fumes and pulmonary irritants; can understand, remember and carry out simple, routine and repetitive tasks; and use judgment limited to simple work related decisions.

(Tr. 86). Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

As for the relevant opinion evidence, when discussing the psychological consultants' assessments, the ALJ found,

> The record includes both the psychological consultant's review from the prior application (1F) [Stephen J. Meyer, Ph.D.] and from the instant case (13F) [Princess Cripe, Psy.D.]. The first proposes greater limitations (*e.g.*, simple to complex instructions and tasks; able to perform in a work setting without strict production requirements, and with some additional assistance available as needed at times of performing new tasks; and, intermittent contact with supervisors, co-workers and public) than are supported by the evidence, so it is assigned partial weight. The

4

latter is more consistent with the record, so it is assigned greater weight. These limitations include simple and complex instructions, complete simple and multi-stop tasks if set at his own pace, no limitations in interacting with others, stable with current treatment and possible limitations in scheduling and frequent breaks but overall able to respond appropriately to work pressures in a work setting.

(Tr. 87–88).

As to treating primary care physician Dr. Tanzer, the ALJ determined,

Treating medical source Dr. Tanzer submitted an assessment that posits greater restrictions than are supported by the medical record. 23F. He established a long treating record (factor 1), but he is a family practitioner (*e.g.*, 4F/106), not a specialist (factor 5). The failure of other medical evidence to support or corroborate his conclusions (factors 3 and 4) requires little weight be assigned his opinion and proposed limitations. In contrast, Dr. Munoz' opinion (26F) is corroborated by and consistent with the longitudinal medical record and posits restrictions and limitations consistent with that record. Dr. Tanzer stated in March 2018 that he was filling out the information for the [Plaintiff]'s Social Security paperwork when positing the restrictions (24F/5), while simultaneously acknowledging the [Plaintiff]'s back improvement (factor 6). Thus, in assigning Dr. Munoz' opinion great weight, it undermines and contradicts Dr. Tanzer's assessment and directs little weight to that opinion under SSR 96-2p and 20 CFR 404.1527(f).

(Tr. 88).

Relying on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform his past relevant work, but was capable of performing other jobs that exist in significant numbers in the national economy, such as a final assembler, addresser, and document preparer.  (Tr. 88–89). ALJ Johnson therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 89).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

Plaintiff asserts two assignments of error. First, Plaintiff argues that the ALJ's mental health RFC determination did not properly account for all of his credible mental health limitations. (Doc. 13 at 7–11). Second, Plaintiff asserts that the ALJ also failed to properly weigh the opinion of his treating physician, Dr. Tanzer. (*Id.* at 11–14).

Remand is appropriate to allow the ALJ to clarify his decision to discount Dr. Tanzer's opinions. Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting

6

20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "'the good reasons rule,' which 'require[s] the ALJ to always give good reasons ... for the weight given to the claimant's treating source opinion.'" *Dixon*, 2016 WL 860695, at *4 (alterations in original) (quoting *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)); 20 C.F.R. § 404.1527(c)(2). To meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Specifically, if an ALJ:

> declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."

*Fletcher v. Comm'r of Soc. Sec.*, 9 F. Supp. 3d 817, 828 (S.D. Ohio 2014) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. § 406.1527(c)(2)–(6) (setting forth the relevant factors). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

In discounting Dr. Tanzer's opinion, the ALJ explained:

> Treating medical source Dr. Tanzer submitted an assessment that posits greater restrictions than are supported by the medical record. 23F. He established a long treating record (factor 1), but he is a family practitioner (*e.g.*, 4F/106), not a specialist (factor 5). The failure of other medical evidence to support or corroborate his conclusions (factors 3 and 4) requires little weight be assigned his opinion and proposed limitations.

(Tr. 88). The ALJ further noted that the findings of an independent medical expert undermined Dr. Tanzer's opinion. (*Id.*).

The good reasons rule requires more. Defendant emphasizes that the ALJ cited the

appropriate regulatory factors in her analysis of Dr. Tanzer's opinion. (Doc. 15 at 15–16). But that, by itself, is not enough. Although the ALJ found that the medical record did not support Dr. Tanzer's opinion, she did not explain that conclusion. *Cf. Hargett v. Comm'r of Soc. Sec.*, No. 19-3718, — F.3d —, 2020 WL 3833072, at *4 (6th Cir. July 8, 2020) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376–77 (6th Cir. 2013); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010)) ("[A]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion."); *Friend*, 375 F. App'x at 552 ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

Dr. Tanzer was Plaintiff's treating physician, and records reflect Plaintiff's regular treatment with Dr. Tanzer from 2014 through 2018. (*See, e.g.*, Tr. 1305–35). During that period of time, Plaintiff consistently complained of back and lower extremity pain. (*See id.*). In March 2018, Dr. Tanzer completed a Physical Medical Assessment Form. (Tr. 1300–03). He opined that Plaintiff would be off task 25% or more of the workday and would likely miss as many as 12 days of work per month. (Tr. 1300). Dr. Tanzer estimated that Plaintiff could sit or stand for 15 minutes at a time and that the maximum Plaintiff could sit or stand in a workday was less than two hours. (*Id.*). Continuing, he noted that Plaintiff could never lift anything over ten pounds and had significant limitations in his ability to use his hands and feet. (Tr. 1300–01). Dr. Tanzer relied on a combination of x-rays, laboratory tests, and physical exams to support his findings. (*Id.*).

The record demonstrates that Plaintiff has a long history of back and lower extremity pain,

including numbness and tingling in his legs.  (*See, e.g.*, Tr. 308, 313, 762, 778, 916–19, 1251).  He attempted to treat that pain with physical therapy, epidurals, and oral steroids, (Tr. 313), all of which were ineffective, (Tr. 491, 781).  Hospital records from his September 2015 back surgery indicate Plaintiff had a tear in his right rotator cuff, bilateral knee pain, a bulging disc, a herniated disc, and arthritis.  (Tr. 471).  Plaintiff continued to experience difficulties with those issues despite the surgery.  (*See, e.g.*, Tr. 792–93).  In addition to surgery, Plaintiff required occasional emergency treatment; for example, in May 2016, Plaintiff fell and injured himself walking when his left leg gave out, (Tr. 821).  X-rays in August 2016 indicated that the herniated disc in Plaintiff's back reoccurred.  (Tr. 1199).  In sum, these records provide some base level of support for Dr. Tanzer's opinion.

And, in addition, opinion evidence provided at least some support for Dr. Tanzer's opinion.  For example, at the reconsideration level, Dr. Leanne Bertani opined that Plaintiff's back issues were a severe impairment that caused him to have some significant exertional, postural, and manipulative limitations.  (Tr. 65–71).

Of course, the record contains evidence contradicting Dr. Tanzer's opinion.  For example, a November 2015 letter from Plaintiff's surgeon indicated that Plaintiff was doing well and his radiculopathy was gone, (Tr. 312); May 2016 treatment notes show that imaging of Plaintiff's back was negative and that his neurological exam was unremarkable, (Tr. 801, 804–05); and x-rays in August 2016 revealed normal spinal alignment with no instability, (Tr. 310).  And the ALJ could have relied on this and similar evidence when providing good reasons for discounting Dr. Tanzer's opinion.  But because she did not do that here, remand is required.  *See Hargett*, 2020 WL 3833072, at \*4; *Friend*, 375 F. App'x at 552.

In this situation, "the Court must determine whether to remand the matter for rehearing or

9

to award benefits." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016). "Generally, benefits may be awarded immediately 'if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Id.* at 924 (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). A court should only award benefits in a case "where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming." *Id.* The Undersigned finds that proof of disability is not overwhelming. *See id.*

Because the Undersigned finds that Plaintiff's treating physician argument is well-taken, she does not address Plaintiff's mental health RFC argument. If the Court adopts this Report and Recommendation, on remand, Defendant may wish to consider addressing that argument as well.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  July 30, 2020                                              /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE